**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| JOSKI R. RABB | CIVIL ACTION NO. 5:08-cv-244 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| EAST CAMDEN & HIGHLAND RAILROAD COMPANY | MAGISTRATE JUDGE HORNSBY |

# MEMORANDUM RULING

Before the Court are Defendant East Camden & Highland Railroad Company ("EACH")'s *Motion for Summary Judgment* (Record Document 39), which Plaintiff Joski Rabb and Intervenor Plaintiff Commerce & Industry Insurance Co. oppose, Defendant's *Daubert Motion* (Record Document 41), and Plaintiff's *Motion in Limine* (Record Document 48). For the reasons which follow, **IT IS ORDERED THAT** the Defendant's *Motion for Summary Judgment* is hereby **GRANTED**. This case is hereby **DISMISSED**, and Defendant's *Daubert Motion* and Plaintiff's *Motion in Limine* are, accordingly, hereby **DENIED** as **moot**. An judgment consistent with this memorandum ruling shall issue contemporaneously herewith.

## I. BACKGROUND

Except where a fact or argument is specifically attributed to a party, the facts narrated below are not in dispute. See generally Def.'s Mot. for Summ. J. & Stmt. of Undisputed Facts in Support of Mot. for Summ. J., Record Documents 39 & 39; Pl.'s Response to Def.'s Stmt. of Mat. Facts & Pl.'s Opp. to Def.'s Mot. for Summ. J. , R-1; Record Documents 43 & 44; Intervenor's Resp. to Def.'s Stmt. of Mat. Facts, Intervenor's Mem. in Opp. to Def.'s Mot. for Summ. J., & Intervenor's Stmt. of Undisp. Mat. Facts, Record Documents 45, 46, & 46-1.

### A. February 5, 2008 Accident

On or about February 5, 2008, Plaintiff was injured while acting in his capacity as a switchman at the Camp Minden facility. At the time of the injury, Plaintiff was working on a three-man train crew executing a "shoving" movement. The movement involved using a switch engine to shove cars down a track toward some other cars in order to move the latter set of cars to another location. Plaintiff was riding the front-most right side ladder of the lead railcar when his arm struck the right half of a metal gate obstructing the right half of the track.

### B. Nature of Suit

Plaintiff sues Defendant for injuries resulting from that accident, allegedly caused by Defendant's negligence and fault, pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq*. See Compl., Record Document 1. Plaintiff claims that this Court's jurisdiction arises pursuant to the same statute. Id. at ¶ 5.

This Court permitted Commerce & Industry Insurance Company ("Intervenor Plaintiff") to intervene in this case on February 5, 2009. The Intervenor Plaintiff is suing for worker's compensation indemnity and medical benefits paid to and on behalf of Plaintiff Joski Rabb for injuries he sustained as a result of the February 5, 2008 accident, see Record Documents 30 & 31, and alleges that this Court has supplemental jurisdiction over its claims pursuant to 28 U.S.C. § 1367(a). Id. ¶ 3.

### C. Defendant's Business

Defendant East Camden & Highland Railroad stores railcars for individual customers at various locations, including Iowa, Tennessee, and Louisiana. One such location is Camp

Minden, Louisiana, where Louisiana's National Guard leases rail track, fixtures, buildings, gates, and other amenities to Defendant. The track leased by Defendant is exclusively within the confines of the Camp Minden installation, which is owned by the State of Louisiana and operated by the National Guard.

At Camp Minden, Defendant's primary enterprise is operating small switch engines to move railcars within the facility for the purpose of storing mainly empty cars for customers who contract directly with Defendant for such storage. Defendant provides storage services only to entities with whom it has a direct contractual relationship, and does not move or transport client railcars across state lines as part of its business.

In an affidavit, Defendant's President Bruce Coffey swore to, among other things, the following relevant facts, many of which Plaintiff disputes: (1) Defendant's operations at Camp Minden are not subject to Federal Railroad Administration ("FRA") oversight. Aff. of B. Coffey, Record Document 39-4, ¶ 4. (2) All railcars Defendant handles at Camp Minden are moved only within the limited confines of Camp Minden and never over any common carrier's mainline track. Id. at ¶ 6. (3) Defendant does not link two common carriers. Id. at ¶ 8. (4) The railcars that Defendant handles at Camp Minden are destined solely for the Camp Minden facility, in contrast to Class I common carriers, which move interstate traffic to, from, and between a multitude of various destinations. Id. at ¶ 12. (5) Defendant handles the railcars destined for Camp Minden exclusively within the Camp Minden property and the railcars cannot be furthered to other destinations. Id. (6) Defendant does not participate in a so-called "waybill revenue settlement" or revenue divisions for any item it moves or stores internally within its leased track. Id. at ¶ 13. (7)

Defendant is in no way owned, in whole or in part, by any common carrier. Id. at ¶ 14. (8) Defendant is not involved in any financial transactions relating to the movement of railcars outside the facilities it leases. Id. at ¶ 15.

Plaintiff, in an affidavit attached to his *Opposition* to Defendant's Motion for Summary Judgment, swore that during the course of his duties as a switchman and conductor, Plaintiff "switched cars from storage" and "delivered cars to the interchange track adjacent to the main line outside of Camp Minden for Kansas City Southern Railway to pick up," and that he "worked out on the interchange track adjacent to the main line on a daily basis either picking up or delivering cars." Aff. Of Joski Rabb, ¶ 2, Record Document 43-3, Exh. 2. Plaintiff Rabb explains that he knows that he "worked adjacent to the main line outside of Camp Minden because [he] switched cars over the Doyline Highway past the Camp Minden gate on track that was maintained by the Kansas City Southern Railroad," and that "when the switches were locked, it was necessary to call Kansas City Southern to unlock them so I could deliver or pick up my cars on Kansas City Southern Property." Id. at ¶ 3. Plaintiff also recalls "having to interchange with the Union Pacific Railroad for a load of cars containing pipes," and "picking up and delivering cars to GATX which is a repair and refurbishing company located on Camp Minden property." Id. at ¶¶ 4–5.

Plaintiff also attached to his Opposition[1] a copy of Defendant's website, which he contends represents evidence that East Camden Railroad "holds itself out both in the state

---

[1] In addition, Plaintiff attached to the Opposition a number of documents that are irrelevant to the question of whether Defendant is a "common carrier" within the meaning of the FELA

of Louisiana and in other states to the public for rail service." See Pl.'s Opp. to Def.'s Mot. Summ. J., Record Document 44 at 3; & Exhibit 3, id., Record Document 44-3. The Court visited Defendant's webpage on the date of this Memorandum Ruling, and takes judicial notice, pursuant to Federal Rule of Evidence 201, of the fact that Defendant advertises the following services, among others: (1) "Safe, cost effective, railcar storage and switching"; (2) "Four distinct locations operating in Arkansas, Iowa, Louisiana, & Tennessee, all with Class I Railroad connections; (3) "One of the nation's largest railcar storage operations capable of handling over 10,000 railcars," (4) "On site railcar repair services"; (5) "The opportunity to utilize warehousing and transloading services through [its] Highland Industrial Park management team" located in Arkansas. "The EACH Railroad: Railcar Storage & Switching," http://www.eachrailroad.com/index.html (last visited April 8, 2009). With respect to the Camp Minden facility, Defendant advertises that each of its locations, including the one in Louisiana, benefits from "integration through [its] administrative offices in Camden, Arkansas." "The EACH Railroad: Railcar Storage & Switching/Louisiana," http://www.eachrailroad.com/id6.html (last visited April 8, 2009). That webpage also notes that the Camp Minden site has "provided EACH customers access to vast amounts of acreage, warehousing, and site infrastructure," and advertises that it offers "direct access to the KCS Railroad's Meridian Speedway." Id.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v.

Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

### III. ANALYSIS

As noted above, Plaintiff's claims in and this Court's jurisdiction over this dispute are founded on the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq* ("FELA" or "the stattue."). Accordingly, Plaintiff bears the burden of proving that the FELA applies to Defendant.[2] See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree . . . It is to

---

[2] Plaintiff complains that prejudice resulted from the Court's order permitting Defendant to file this out of time motion for summary judgment because Plaintiff was unable to perform "additional discovery on this specific issue." Record Document 43 at 1. The Court is unmoved by Plaintiff's effort to place blame on the Defendant and this Court. Plaintiff should have, as an initial matter, conducted discovery in an effort to bring to light facts supporting the sole basis for this Court's alleged subject matter jurisdiction, an issue which may be raised by the Court or any party at any time during the proceedings.

be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." Id.) The statute provides in pertinent part:

> Every common carrier by railroad while engaging commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury . . . resulting . . . from the negligence . . . of such carrier. . . .

45 U.S.C. § 51. Defendant argues that the FELA does not apply to it because it is not a "common carrier" within the statute's meaning, and moves for summary judgment on that ground.[3]

In the case of Lone Star Steel Company v. McGee, 380 F.2d 640 (5th Cir. 1967), the Fifth Circuit noted that

> [a] common carrier has been defined generally as one who holds himself out to the public as engaged in the business of transportation of person or property from place to place for competition, offering his services to the public generally. The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently, and hence is regarded in some respects s a public servant.

Id. at 643 (citing Kelly v. Gen. Elec. Co., 110 F. Supp. 4, 6 (E.D. Pa. 1953), aff'd, 204 F.2d 692 (3d Cir.), cert denied 346 U.S. 868 (1953); see also Willard v. Fairfield Southern Co., Inc., 472 F.3d 817, 821 (11th Cir. 2006); Kieronski v. Wyandotte Terminal R.R. Co., 806 F.2d 107, 108 (6th Cir. 1986).

---

[3] In its brief, Defendant also argues that it is not liable to Plaintiff because it does not own the premises upon which Defendant was injured, and that Plaintiff's injury was not due to Defendant's negligence. See Def.'s Memo of Authorities in Support of Mot. Summ. J., Record Document 39-2. Because this Court concludes that it is without jurisdiction to adjudicate this dispute, those arguments are not addressed here.

The Lone Star Court, after examining a number of other cases addressing the definition of a "common carrier," identified four "considerations" relevant to determining whether a particular entity is a common carrier:

> First—actual performance of rail service, second—the service being performed is part of the total rail service contracted for by a member of the public, third—the entity is performing as a part of a system of interstate rail transportation by virtue of a common ownership between itself and a railroad or by a contractual relationship with a railroad, and hence such entity is deemed to be holding itself out to the public, and fourth–remuneration for the services provided is received in some manner, such as a fixed charge from a railroad or by a percentage of the profits from a railroad.

Lone Star Steel Company, 380 F.2d at 647.

In Lone Star,

> the defendant produced steel and steel products and operated an in-plant rail system at its plant. Other industries also had operations on the plant grounds. A main line of the Texas & Northern Railway Company ("T&N"), a full-service common carrier railroad, extended the length of Lone Star's facility in conjunction with the in-plant system. Lone Star owned over ninety percent of . . . T&N['s stock] and received dividends on the profits. Lone Star also owned and operated locomotives at the plant for Lone Star's in-plant rail movements and for the other industries at the plant in furtherance of T&N's operations with those businesses. Because of th[o]se close connections between Lone Star and T&N, the court held that Lone Star's rail activities. . . . met the four criteria to be classified as a common carrier.

Loveless v. Railway Serv. Inc., 665 N.E.2d 252, 254 (1995) (cited with approval in Mack v. East Camden & Highland Railroad Co., 297 F. Supp. 2d 1052 (W.D. Tenn. 2003).

In the case at bar, the Plaintiff has not demonstrated that any of the characteristics of the entity held to be a common carrier in Lone Star also describe EACH. There is no evidence that EACH has an ownership or contractual relationship with another railroad such

that EACH could be deemed to hold itself out to the public as a common carrier. See Mahfood v. Continental Grain Co., 718 F.2d 779, 781 (5th Cir. 1983) (per curiam) (the mere existence of agreements with Missouri-Pacific Railroad did not, without more, indicate that the defendant and the common carrier railroad were "highly integrated and mutually dependent," as the court found in Lone Star). Indeed, Defendant presents this Court with uncontroverted evidence that EACH's operations at Camp Minden are distinguishable from the Lone Star operation because no company other than Defendant's operates on the Camp Minden grounds, and because EACH does not profit from the revenue generated from the items it moves and stores on behalf of the railroads with which Defendant contracts. See Mack, 297 F.Supp.2d at 1061 (citing McCrea v. Harris Cty Houston Ship Channel Navigation Dist., 423 F.2d 605 (5th Cir. 1970)) ("mitigating against Defendant's being defined as a common carrier is the fact that Plaintiff has presented no evidence that Defendant charges for the movement of rail cars," and "a factor in deciding whether a railroad is a common carrier is whether there is a direct charge for the movement of rail cars incident to unloading). Applying the Lone Star factors to EACH's operations, this Court concludes that Defendant is not a "common carrier."

Plaintiff's testimony that he has switched cars from storage and delivered cars to an interchange adjacent to Kansas City Southern Railway ("KCSR")'s mainline track and Defendant's statements on its website do not affect this Court's conclusion. Plaintiff admits that "when the switches [(to KSCR's mainline track)] were locked, it was necessary to call Kansas City Southern to unlock them." Aff. Of Joski Rabb, ¶ 3, Record Document 43-3, Exh. 2. This does not constitute evidence that Defendant "is performing as part of a system of interstate rail transportation." See Lone Star, 380 F.2d at 647. On the contrary, it

suggests that Defendant's relationship with KCSR was strictly limited to storing and switching the latter company's cars, rather than a means of "holding itself out to the public" through a contract with a common carrier. Id. The fact that Defendant may access KCSR's mainline railway, through gates controlled by KCSR, is simply not enough to render it a common carrier. See Mahfood, 718 F.2d at 781 (the fact that the defendant had access to 1,500 feet of Missouri-Pacific Railroad's track did not render the defendant a common carrier when the section of track was used by the defendant for storage only and the track did not connect two common carrier railroads).

### IV. CONCLUSION

For the reasons stated above, Defendant's *Motion for Summary Judgment* (Record Document 39) is hereby **GRANTED**. Plaintiff's claims are hereby **DISMISSED**, and Defendant's *Daubert Motion* (Record Document 41) and Plaintiff's *Motion in Limine* (Record Document 48) are, accordingly, hereby **DENIED** as **moot**. Having dismissed those claims with respect to which Plaintiff claimed original jurisdiction, the Court hereby **DISMISSES**, pursuant to 28 U.S.C. § 1367(c), the subrogated claims of Intervenor Plaintiff Commerce and Industry Insurance Company. This case shall be **CLOSED**, and a judgment consistent with this memorandum ruling shall issue contemporaneously herewith.

Thus done and signed, this the 8th day of April, 2009, in Shreveport, Louisiana.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE